UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE LAMONT
MATTHEWS (#828534),

          Plaintiff,

v.

LES BLEIL and
LISA WALSH,

          Defendants.

_____/

Case No. 2:21-cv-13017

District Judge Jonathan J.C. Grey

Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 23)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendants Bleil and Walsh's motion for summary judgment (ECF No. 23).

**II.**    **REPORT**

    **A.**    **Background**

    Ronnie Lamont Matthews ("Plaintiff") was paroled from the Michigan Department of Corrections' (MDOC's) custody on March 19, 2024.  *See* www.michigan.gov/corrections, "Offender Search" (last visited June 26, 2024).  In December 2021, when he was located at the MDOC's Macomb Correctional Facility (MRF), Plaintiff filed the instant lawsuit *in pro per* against Unknown (Les) Bleil and Lisa Walsh, who he respectively identifies as an MRF Corrections

Officer (CO) and an MRF Assistant Resident Unit Supervisor (ARUS). (ECF No. 1, PageID.3 ¶¶ 9-10; *id.*, PageID.6, 12, 13.) (*See also* ECF No. 15.)

Notwithstanding the notice regarding parties' responsibility to notify court of address change (ECF No. 6) and Plaintiff's recent parole, Plaintiff's address of record remains MRF. (*See* ECF No. 25, PageID.150.)

## B.    Pending Motion

Defendants have appeared via counsel, and Judge Grey has referred this case to me for pretrial matters. (ECF Nos. 15, 22.) Currently before the Court is Defendants' September 1, 2023 motion for summary judgment. (ECF No. 23.) Plaintiff has filed a timely response (ECF Nos. 24, 25),[1] and Defendants have filed an errata sheet (ECF No. 26), as well as a reply (ECF No. 27). This motion is ready for decision.

## C.    Discussion

### 1.    Factual allegations

In February 2016, someone purchased a Clear Tunes 13" LED television to be shipped to Matthews at the MDOC's St. Louis Correctional Facility (SLF). (ECF No. 1, PageID.7.)

#### a.    July 19, 2021 (Defendant Bleil)

---

[1] *See also Houston v. Lack*, 487 U.S. 266 (1988).

Plaintiff alleges that, on July 19, 2021, at which point he was located at MRF, he "came on base in his housing unit after count had clear[ed]." (ECF No. 1, PageID.3 ¶ 11.) Plaintiff declares Bleil "unreasonably singled [him] out from many other prisoner[s] on base[,]" and asked Plaintiff why he was on base. (ECF No. 25, PageID.166 ¶¶ 2, 3.) Plaintiff "explained to him that the Unit was open[,]" and Bleil responded, "get off the base and I will write you a misconduct if I see you on base again[.]" (*Id.*, ¶¶ 3, 4.) As Plaintiff left the base, he stated, "I'll write a grievance on you because I [have not] violated any rules[.]" (*Id.*, ¶ 5.) Bleil stated, "I am the rule[,]" instructed Plaintiff "to come here[,]" and "asked for [Plaintiff's] cell number and [identification][.]" (*Id.*, ¶ 6, 7.) Plaintiff gave Bleil his identification and cell number and then walked away. (*Id.*, ¶ 7.) (*See also* ECF No. 1, ¶ 11.)

Bleil removed a television from Plaintiff's cell, allegedly because the television was altered. (ECF No. 1, PageID.8-9.) The Contraband Removal Record (CRR) notes that "prisoners can not [sic] alter state or personal property[,]" and the notice of intent (NOI) to conduct an administrative hearing contends that Matthews "engraved his number + serial number[,]" and lists the "reason for hearing" as "does not belong to prisoner Matthews #828534." (*Id.*) Plaintiff alleges the cell search – during which his television was confiscated – was in retaliation for the above-described incident. (ECF No. 1, ¶ 11.) He further alleges

that Bleil asked Plaintiff whether he had a receipt for the television, "which

plaintiff submitted[;]" however, Bleil stated "he didn't care about the receipt, and

that [P]laintiff's number allegedly looked altered." (*Id*.; *see also id*., PageID.7.)

Plaintiff alleges that, although he objected to the "unjust confiscation . . . [,]" Bleil

responded, "I told you I was the rule, now let's see how good your grievance is

now." (*Id*.)  Plaintiff also alleges that Bleil falsified the resulting:  (i) NOI (*see id*.,

PageID.8); and, (ii) CRR, describing the television as "AMP'D" instead of "Clear

Tunes," (*see id*., PageID.9), in an attempt "to frustrate the process [of] plaintiff

getting his property back." (*Id*., ¶ 11.)

Plaintiff alleges he filed Grievance Identifier MRF-21-07-1612-17Z on July

19, 2021.  (ECF No. 1, ¶ 12.)  The September 2021 supplemental Step I Grievance

Response summarizes the investigation by explaining that Plaintiff declined an

interview on September 7, 2021 and that, on September 14, 2021:

> Officer Bleil was interviewed and denies all allegations.  He says that
> he did confiscate the TV after a cell search because the Serial
> Numbers on the proof of purchase did not match the television and the
> numbers were burned in the TV which is not how the numbers are
> inscribed at this facility.  Prisoner Matthews has received his TV back
> from the counselor after a hearing.

(ECF No. 1, PageID.10)  (*See also* ECF No. 1, ¶ 12.)  Citing MDOC PD 03.03.130

("Human Treatment and Living Conditions of Prisoners"), the grievance

respondent, Sergeant Slater, noted:  "Grievance Denied.  Institutional Video at

[MRF] does not have audio recording and there are no witnesses to validate these allegations." (ECF No. 1, PageID.10.)

### b.    July 20, 2021 (Defendant Walsh)

Plaintiff alleges that, on July 20, 2021, he "called his mother and complained about the situation and asked her to contact the facility to inquire into the illegal taking of [his] property." (ECF No. 1, ¶ 13.) Plaintiff alleges his mother called MRF, "asking about the incident in question[,]" after which Plaintiff approached Walsh, "asking whether or not she'd hold a hearing [that] day to return" the television to him. (*Id*.) According to Plaintiff, Walsh responded she was not dealing with it, "because of plaintiff's mother having called the facility complaining about the taking of his personal property." (*Id*.)

Plaintiff alleges he filed Grievance Identifier MRF-21-07-1604-07B that same day. (*Id*., ¶ 14.) The August 2021 supplemental Step I Grievance Response describes Plaintiff's complaint as stating that Bleil took the television in retaliation and summarizes the investigation as follows:

> Grievant states C/O Bleil falsified a NOI saying that the number was altered when it was not. Grievant was interviewed and stated ARUS Walsh gave him his TV back. Grievant showed respondent his TV and it did not appear altered, it had [Grievant's] prison number burned in the back of the TV along with the serial number. ARUS Walsh was interviewed and stated she returned Grievant[']s TV after she verified it was his TV and was not altered.

5

(ECF No. 1, PageID.11.)  (*See also* ECF No. 1, ¶ 14.)  Citing MDOC PD

04.07.112 ("Prisoner Personal Property") (*see* ECF No. 23-3), the grievance

respondent, Resident Unit Manager (RUM) Jenkins-Grant, noted:

> You were given your TV back by ARUS Walsh after she verif[i]ed it
> belonged to you and was not altered.  Staff will be advised that
> prisoners who receive televisions will have their prisoner number
> engraved in it; engraving done by facility staff does not make a
> prisoner[']s TV or other property contraband.  *Grievance resolved*.

(ECF No. 1, PageID.11 (emphasis added).)

### 2.     First Amendment retaliation

Plaintiff's "claims for relief" are based on the First Amendment.  (ECF No.

1, ¶¶ 1, 4, 16.)  Referring to his factual allegations (*id*., ¶¶ 11-14), Plaintiff alleges:

> [D]efendants Bl[ei]l [and] Walsh [were] motivated by substantial
> desire *to punish plaintiff for* engaging in *protected conduct* in filing
> verbal complaints confiscated and refuse to return initially plaintiff[']s
> personal property (t.v.), in violation of the Free Speech and
> Petitioning Clause of the First Amendment of the United States
> Constitution.

(*Id*., ¶¶ 15-16 (emphases added).)  In other words, Plaintiff alleges that Defendants

retaliated against him for engaging in his First Amendment rights to "the freedom

of speech" and to "petition the Government for a redress of grievances[,]" U.S.

Const. amend. I.  (*Id*., ¶¶ 1, 2, 11.)[2]  *See Carter v. Dolce*, 647 F. Supp. 2d 826, 834

---

[2] Plaintiff alleges that, on the day in question, Bleil "singled plaintiff out from the many other prisoners on base asking why 'plaintiff was on base?'." (ECF No. 1, ¶ 11.)  Plaintiff also alleges that Bleil "falsified" the CRR and the NOI and "actually confiscated in an attempt to frustrate the process in plaintiff getting his property

(E.D. Mich. 2009) (Lawson, J., *adopting in part and rejecting in part report and recommendation of* Majzoub, M.J.) ("The right to file a grievance stems from the First Amendment right to free speech and to petition the state for redress of grievances."). (ECF No. 25, PageID.159.)

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

> **a.  Plaintiff was not engaged in protected conduct when, on July 19, 2021, he threatened to write a grievance. (Defendant Bleil)**

---

back." (ECF No. 1, ¶ 11.) On the other hand, Bleil declares that, "[a]t no time" did he "intentionally falsify any [NOI] or [CRR] for any reason." (ECF No. 23-2, ¶ 12.) Plaintiff's pleading does not mention "due process" or "equal protection" or the Fourteenth Amendment; however, it does cite the First Amendment and mentions retaliation. (ECF No. 1, ¶¶ 1, 2, 4, 11, 16.) As a result, while Plaintiff's *motion response* mentions "a liberty interest in not being arbitrarily punished by prison official[s][,]" mentions "depriv[ing] a person of liberty or property[,]" (ECF No. 25, PageID.153 ¶ 2), states Bleil's behavior integrates "abuse of authority[,]" contends Bleil "violated su[b]stantive du[e] process when he took plaintiff's television alleging claim of an altered I.D. number to cover his deceitful intent[,]" and compares himself to "others similarly situated[,]" (*id.*, PageID.160), this report interprets these contentions as part of the "adverse action" element of a First Amendment retaliation claim, as pleaded, and which Plaintiff also addresses in his motion response (*see id.*, PageID.161, 162).

As noted above, Plaintiff's pleading mentions "protected conduct in filing verbal complaints . . . ."  (ECF No. 1, ¶ 16.)  More specifically, Plaintiff alleges he told Bleil, "I'll write a grievance on you because I haven't violated any rules[,]" Bleil responded, "I am the rule[,]" and then Plaintiff responded, "I'll be sure to put that in the griev[an]ce as well."  (ECF No. 1, ¶ 11.)  (*See also* ECF No. 25, PageID.166 ¶ 5 [Pl.'s Declaration].)

At his deposition, Plaintiff confirmed that, as for Bleil, Plaintiff was not "claiming anything else as protected conduct[,]" other than "telling CO Bleil that [he] [was] going to write a grievance[.]"  (ECF No. 23-5, PageID.137.)

### i.    Threats to file *non-frivolous* grievances constitute protected conduct.

In 2009, the Sixth Circuit acknowledged in an unpublished case that it appeared "not to have determined conclusively whether merely threatening to file a grievance constitutes protected activity."  *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. Sept. 29, 2009).  The court also acknowledged that, "[i]n two other unpublished orders," it held that "certain prisoners who had threatened to file grievances were not engaged in protected conduct," noting that, in each case, it based its "conclusion on the fact that the threatened grievance was frivolous and that prisoners do not have a protected right to file frivolous grievances."  *Pasley*, 345 F. App'x at 985.  *See also Carter v. Dolce*, 647 F. Supp. 2d 826, 833–34 (E.D. Mich. Aug. 19, 2009) (Lawson, J.) (recognizing that "neither the Sixth Circuit nor

8

the Supreme Court ha[d] addressed explicitly whether threatening to file a grievance constitutes protected conduct[,]" but acknowledging that "a clearly stated intention to file a grievance amounts to protected conduct within the meaning of *Thaddeus–X.*").

Some years later – this time in a published opinion – the Sixth Circuit expressly stated in the "protected conduct" context and with respect to pursuing a grievance "orally, rather than in writing[,]" that "[a]n inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral." *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("Mack's oral grievance to Stephens regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment.")).  (ECF No. 25, PageID.162-163.) *See also White v. McKay*, No. 18-1473, 2019 WL 5420092, at *2 (6th Cir. June 27, 2019) (referencing *Pasley* and *Maben, supra.*; other citations omitted).

Moreover, in the wake of *Maben*, the Sixth Circuit has acknowledged, albeit in an unpublished case, that "a prisoner who threatens to file a grievance against a prison official is engaged in protected conduct so long as the threatened grievance is not frivolous." *Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at *3 (6th Cir. Jan. 29, 2021) (referencing *Maben* and *Pasley*).  *See also Tucker v. Wener*, No. 19-1395, 2020 WL 6162637, at *2 (6th Cir. July 20, 2020) ("Tucker engaged in

protected conduct when he complained about unsafe working conditions and threatened to file grievances about those conditions.") (referencing *Maben* and *Pasley*); *Kirschke v. Chance*, No. 19-2324, 2020 WL 6703843, at *2 (6th Cir. July 21, 2020) ("Kirschke engaged in protected conduct when he filed grievances and threatened to file grievances.") (referencing *Maben* and *Pasley*).  Thus, to a certain extent, Plaintiff correctly notes that a "[p]risoner has a [c]onstitutional right to partake in protected conduct be it a verbal threat of grievance or a written grievance."  (ECF No. 25, PageID.159.)

> ii.  **A grievance based only on a single instance of verbal abuse (or verbal harassment) is frivolous.**

Defendants argue that Plaintiff's "threat to file a grievance against Bleil" is not protected conduct, because a grievance alleging "verbal abuse" would have been "frivolous."  (ECF No. 23, PageID.89.)  "Frivolous" has been defined as "[l]acking in high purpose[,]" "trifling, trivial, and silly[,]" "[l]acking a legal basis or legal merit[,]" or "manifestly insufficient as a matter or [sic] law." FRIVOLOUS, Black's Law Dictionary (11th ed. 2019).

Although *Maben* did not resolve the question of what makes a prisoner's grievance frivolous, it did offer the following observations:

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*.  *Ziegler v. State of Michigan*, 90 Fed.Appx. 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner

10

complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White–Bey v. Griggs*, 43 Fed.Appx. 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, [No. 99-1711, 2000 WL 1434456], at *1–2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus–X v. Love*, [No. 98-2211, 2000 WL 712354], at *2–3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

*Maben*, 887 F.3d at 264-265.  Conversely, the Sixth Circuit has "also described a non-frivolous grievance as a 'legitimate' grievance."  *Maben*, 887 F.3d at 265 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)).

Defendants argue that Matthews' threat to write a grievance against Bleil is not protected conduct, because a grievance alleging "verbal abuse" would have been "frivolous."  (ECF No. 23, PageID.89.)  Defendants contend that "[t]he grievance at issue was legally frivolous because an inmate has no constitutional right to be free from verbal abuse."  (*Id*., PageID.90.)  To be sure, it seems the question of whether a prisoner has a constitutional right to be free of verbal abuse or verbal harassment *may be distinct from* the question of whether a grievance is frivolous because the subject matter does not involve a constitutional right, or –

more particularly in this case – whether a grievance regarding verbal abuse or harassment is *always* frivolous.

However, Defendants cite at least one case that assists the Court in answering these questions. Two of the cases upon which Defendants rely do not expressly address frivolity or First Amendment retaliation, as are at issue in the present case. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("If the beating in *Johnson* does not qualify as punishment, neither does the 'verbal abuse' or 'harassment' or 'arbitrariness' covered by the jury instructions here."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.") (citations omitted). (*See also* ECF No. 27, PageID.184-185.) The third case, *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456 (6th Cir. Sept. 18, 2000), a pre-*Maben* First Amendment retaliation decision – which *Maben* recognized, hits closer to the mark, although it is unpublished. Scott alleged "he threatened to file a grievance over [Kilchermann's] verbal abuse . . . ." *Scott*, 2000 WL 1434456, *1. The Sixth Circuit concluded that Scott "was not engaged in protected conduct . . . [,]" explaining as follows:

> While a prisoner has a First Amendment right to file a grievance against prison officials on his own behalf, this right is protected only if the grievance is not frivolous. *See Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir.2000). An inmate has no constitutionally protected right to be free from verbal abuse. *See Ivey v. Wilson,* 832 F.2d 951, 954-55 (6th Cir.1987). Thus, in the case at bar, Scott's claim that he

12

> was retaliated against for threatening to file a frivolous grievance will
> not support a retaliation claim under *Thaddeus-X.*

*Scott*, 2000 WL 1434456, \*2.  *See also Herron v. Harrison*, 203 F.3d 410, 415 (6th

Cir. 2000) ("Herron's pursuit of legal claims against CCCF officials in the instant

case and in previous cases was protected conduct only to the extent that the

underlying claims had merit.").  At least one pre-*Maben,* unpublished case from

our District references *Scott* and reaches a similar conclusion.  *See Porter v.*

*Howard*, No. 11-CV-12317, 2012 WL 3263778, at \*4 (E.D. Mich. Aug. 9, 2012)

(Borman, J.) ("In the instant case, Plaintiff has not alleged that his bunkie was

threatening him or that he feared his bunkie in any way.  Plaintiff merely alleges

that he and his bunkie were not getting along.  He therefore had no constitutionally

protected right to change his bunkie.  Plaintiff's complaints regarding his bunkie

were thus frivolous and not protected by the First Amendment."), *aff'd* (Feb. 19,

2013).

Citing *Scott*, Defendants contend that "the Sixth Circuit has specifically

found a prison grievance to be frivolous where the inmate complained that he had

been subject to verbal abuse." (ECF No. 23, PageID.90.)  Maybe so; however, the

Undersigned is reluctant to base his recommendation solely on a single,

unpublished Sixth Circuit case.  The Court's own research reveals another

unpublished Sixth Circuit case – a post-*Maben* First Amendment retaliation

13

decision – which supports Defendants' contention, as the Sixth Circuit determined

a plaintiff's complaint about a defendant's use of an expletive was frivolous:

> Good's complaint that Spencer used a fleeting expletive regarding his
> exit from the dayroom is also trivial and frivolous. *See Scott v.
> Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept.
> 18, 2000). Michigan's prison regulations prohibit staff members from
> directing "derogatory, demeaning, humiliating, or degrading actions
> or language" towards others and subjecting prisoners to personal
> abuse. Mich. Dep't of Corr. Pol. Dir. 03.03.130(I)(6), (J). But here,
> Spencer's isolated use of an expletive in directing Good to exit the
> dayroom was unprofessional but not abusive, and therefore Good's
> complaint about this incident was frivolous. *Compare Thaddeus-X,*
> 175 F.3d at 398 (stating that "[p]risoners may be required to tolerate
> more than public employees, who may be required to tolerate more
> than average citizens") (discussing the adverse-action element) *with
> Parker v. Reddin*, No. 20-1106, 2020 WL 8415084, at *3-4 (6th Cir.
> Aug. 5, 2020) (concluding that a Michigan prisoner's grievance was
> protected activity because corrections officers' verbal abuse included
> *physical* threats and use of *racial slurs*).

*Good v. Spencer*, No. 22-1905, 2023 WL 6849240, at *3 (6th Cir. Sept. 20, 2023)

(emphases added). The Undersigned also notes two post-*Maben* unpublished cases

from this District citing *Scott* and concluding that a plaintiff's complaint about

verbal abuse was frivolous. *See Lunn v. Graham*, No. 2:23-CV-10378, 2024 WL

2060872, at *4 (E.D. Mich. Apr. 1, 2024) (Morris, M.J.) ("Lunn's complaint

regarding Graham's direction for him to mind his business does not salvage his

grievance as Graham's comment amounted to nothing more than verbal abuse. . . .

Thus, the undersigned finds that Lunn's August 26, 2022 complaint was indeed

frivolous and the act of filing the grievance does not qualify as protected

14

conduct."), *report and recommendation adopted*, No. 23-10378, 2024 WL 2060119 (E.D. Mich. May 8, 2024) (Michelson, J.); *Vesey v. Trowbridge*, No. 21-10116, 2023 WL 6394367, at *4 (E.D. Mich. Sept. 30, 2023) (Behm, J.) ("The grievance explains that Trowbridge said she would fire Vesey if he indicated an unwillingness to perform job duties in the future. . . . The court concludes that Vesey's grievance was, therefore, frivolous in that it merely complained of verbal abuse."). *But see Harp v. Hallett*, No. 19-CV-13789, 2024 WL 1533645, at *4 (E.D. Mich. Apr. 9, 2024) (Levy, J.) ("[I]t is not clearly established in the Sixth Circuit that a grievance based solely on verbal abuse (persistent or otherwise) constitutes protected conduct.") (referencing *Maben*, *Scott*, and *Good*).[3]

Based on *Scott*, *Good*, and the various other cited cases from the E.D. Mich., the Undersigned is persuaded that, where, as here, "the only complaint is verbal abuse" – and in this case a single instance of it – then the grievance is "frivolous." (ECF No. 23, PageID.90-91.) *See Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981) (recognizing that prison "conditions [might be] restrictive and even harsh"

---

[3] In the underlying report and recommendation, Judge Morris, within her discussion of "protected activity," stated, *inter alia*, that "persistent verbal harassment from prison officials is not a "de minimis" issue[,]" and that, "[e]ven if verbal harassment of inmates might not raise constitutional concerns, it is abhorrent, unprofessional behavior that inmates must be able to report internally without fear of repercussions." *Harp v. Hallett*, No. 5:19-CV-13789, 2023 WL 8710575, at *7 (E.D. Mich. July 26, 2023), *report and recommendation adopted in part*, *rejected in part*, No. 19-CV-13789, 2024 WL 1533645 (E.D. Mich. Apr. 9, 2024).

and that the Constitution does not mandate "an ideal environment" or to be "free of discomfort.")

### iii.   Plaintiff threatened to file a grievance against Bleil, intending to base it on verbal harassment.

At his video conference deposition, when asked what he was "going to write the grievance about[,]" Plaintiff answered, "Yes; harassment, yes." (*Id.* ECF No. 23-5, PageID.137 [Lines 4-9]) Defense counsel then asked, "Okay.  Verbal harassment?"  Plaintiff answered, "Yes." (*Id.*)  Then, defense counsel asked, "Was there anything else?"  Plaintiff answered, "No." (*Id.*) (*See also* ECF No. 23, PageID.89-90.)  Based on this testimony, Defendants argue that Plaintiff "is unable to show he was engaged in protected conduct[,] because, legally, he was only threatening to grieve verbal harassment, which does not rise to the level of protected conduct for First Amendment retaliation purposes." (*Id.*, PageID.90.)

The Court should agree and, based on *Scott*, *Good*, and the various other E.D. Mich. cases cited above, should conclude that Plaintiff was not engaged in protected conduct when he merely threatened to file a grievance against Bleil, intending to base it on verbal harassment.  *See also Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all . . . .").

### iv.    Abusive or manipulative use of the grievance system is not protected conduct.

In further support of their argument that Plaintiff's "threat to file a grievance against Bleil was not protected conduct . . . [,]" Defendants contend Plaintiff "was using the threat as a warning," which they contend "is not protected conduct." (ECF No. 23, PageID.91.)  Here, Defendants note, "'[a]busive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara,* 680 F.3d 686, 699 (6th Cir.2012)).  (ECF No. 23, PageID.91-92.)  *See also King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012) ("Abusive or manipulative use of a grievance system would not be protected conduct.") (referencing *Hill v. Lappin,* 630 F.3d 468, 472 (6th Cir.2010)); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (Where Hill alleged he filed grievances against prison staff "for being abusive[,]" the court could not determine "[w]hether the grievances [we]re frivolous . . . because there [we]re no details about those grievances beyond Hill's allegations.").

Citing MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") (effective Mar. 18, 2019) – which provides prisoners and parolees "with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement[,]" and permits submitting grievances for such

violations "that personally affect the grievant," (*see* ECF No. 23-6, PageID.141, ¶

F) – Defendants contend the MDOC's grievance procedure does not provide "a

means of manipulating staff behavior without a true intention to file a grievance."

(ECF No. 23, PageID.92.)  *See also Jones v. Bock*, 549 U.S. 199, 219 (2007)

("'[T]he primary purpose of a grievance is to alert prison officials to a problem . . .

.'") (parenthetically quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir.

2004)).  (ECF No. 23, PageID.92.)  During Plaintiff's deposition, the following

exchange took place:

> Q    Okay. And in your Complaint you said that you told him that you were going to write a grievance on him?
>
> A    Yes, if he continued to harass me.
>
> Q    And did he continue to do so?
>
> A    Yes.
>
> Q    By doing what?
>
> A    Well, he telling me to get off -- sending me up. Telling me to get off base when it was other prisoners on the base. And said that he'll write me a misconduct.
>
> Q    Okay. So let me ask you this: You told him that you were going to write a grievance on him?
>
> A    Yes.
>
> Q    Why didn't you just write him -- why didn't you just go and write the grievance?
>
> A    I stated it.

18

**Q**     Okay. Was that like a warning to him or something?

**A**     Yes.

(ECF No. 23-5, PageID.135 [Lines 8-24].)  (ECF No. 23, PageID.92.)

Defendants contend that the First Amendment right to petition the government for a redress of grievances "should not be used as a means of trying to manipulate behavior, especially within a prison."  (*Id*.)  They also contend "[t]here is a legitimate penological and security interest in corrections officers having authority and control over prison inmates, including the authority to give reasonable orders, such as to leave a particular area."  (ECF No. 23, PageID.92-93.)  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  And, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct[.]'"  *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999).  Beyond Defendants' argument that there is a legitimate penological interest in corrections officers having the authority to give reasonable orders – such as to leave a particular area – courts have acknowledged a legitimate penological objective or interest in detecting contraband.  *See also Dearing v. Weaks*, No. 18-4173, 2019 WL 6464017, at *3 (6th Cir. July 15, 2019) ("Because detecting and deterring the possession of contraband is a legitimate penological objective and because federal courts accord

19

substantial deference to the judgment of prison administrators, the defendants'

confiscation of Dearing's birth certificate, pursuant to ODRC Policy 61-PRP-

01(VI)(A)(9), did not run afoul of the First Amendment."); *Kitchen v. Heyns*, No.

14-12883, 2014 WL 6810388, at *4 (E.D. Mich. Dec. 2, 2014) (Zatkoff, J.,

*adopting report and recommendation of* Grand, M.J.) ("even if Plaintiff could

establish causation, statements contained within (and documents attached to)

Plaintiff's own pleadings make clear that Defendants had a legitimate penological

interest in confiscating the personal property items at issue, which were found to

constitute contraband after administrative hearings.").

Whatever penological interests or objectives are relevant to Plaintiff's case,

it is not clear that Plaintiff's "warning" to Bleil – as mentioned in Plaintiff's

deposition – would qualify as "an abusive or manipulative" use of the MDOC's

grievance process; of course, if it did, then it would not be protected conduct.

(ECF No. 23, PageID.93.)

### iv.    Summation

In his response, Plaintiff contends he "was engaged in protected conduct"

when he "threatened to write a grievance for harassment[,]" or "threatened to write

a grievance against [Bleil], if [Bleil] continued with his campaign of harassment

against him."  (ECF No. 25, PageID.152, 161; *see also id*., PageID.156, 160.)

However, as the Sixth Circuit's unpublished decisions in *Scott* and *Good* and

various unpublished cases from this District suggest, grievances – let alone mere threats to file grievances – based solely on verbal abuse are frivolous.  In sum, as Defendants correctly note with respect to Plaintiff's claim against Defendant Bleil, Matthews "does not have a constitutional right to frivolous grievances," he "was not engaged in protected conduct," and, therefore, he "has not met the burden of his First Amendment retaliation claim."  (ECF No. 27, PageID.185.)

> **b.    Plaintiff was not engaged in protected conduct when, on July 20, 2021, his mother called MRF to make a verbal complaint. (Defendant Walsh)**

Plaintiff's allegations against Defendant Walsh refer to Plaintiff's July 20, 2021 call to his mother, her same-day call to MRF, and Plaintiff asking Walsh whether she would hold a hearing that day to return his television.  (ECF No. 1, ¶ 13.)  At his deposition, Plaintiff was asked, "what is the protected conduct for ARUS Walsh?"  (ECF No. 23-5, PageID.18 [Lines 23-24].)  Plaintiff answered: "Me call – having my mother call up here about the incident."  (*Id*. [Line 25].)

In his response, Plaintiff declares his mother bought the television for him. (ECF No. 25, PageID.165 ¶ 3.)  Plaintiff alleges he "engaged in protected conduct against defendant Walsh when he had his Mother call the prison and file a verbal complaint to her supervisor's office for failure to perform her duties."  (ECF No. 25, PageID.162.)  Plaintiff contends that "Walsh revealed to Plaintiff that his

Mother called on July 20, 2021 when he went to her office to speak with her about Bleil taking [his] television[.]"  (*Id*., PageID.157.)

However, Defendants are correct that "*Matthews* was not engaged in protected conduct when his *mother* called the facility . . . ."  (ECF No. 23, PageID.93 (emphases added).)  "An inmate has an undisputed First Amendment right to file grievances against prison officials on *his own behalf*."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (emphasis added).  (*See also* ECF No. 27, PageID.181.)  Put another way, "Matthews cannot claim his mother's actions as protected conduct."  (ECF No. 23, PageID.94.)  *See Hass v. Horton*, No. 2:21-CV-91, 2021 WL 2946494, at *3 (W.D. Mich. July 14, 2021) ("Plaintiff did not himself engage in protected conduct when his mother called State offices and the prison.").

### c.   Remaining First Amendment retaliation arguments

Defendants also argue that Plaintiff "cannot show an adverse action was taken against him[,]" Plaintiff "cannot show the threat to file a grievance was the but-for cause of the cell search or the confiscation of the television[,]" and "[t]here is a nonretaliatory basis for Bleil's actions[,]" (ECF No. 23, PageID.95-105), and Plaintiff addresses these arguments in his response (ECF No. 25).  However, if the Court agrees that Plaintiff was not engaged in protected conduct with respect to his First Amendment retaliation claims against Bleil and Walsh, then the Court need

not continue to perform adverse action, causation, and/or non-retaliatory basis analyses of these claims.

### 3. Qualified immunity

Defendants contend they are entitled to qualified immunity, because "a rational trier of fact would not conclude that [they] committed a clearly established constitutional violation against the Plaintiff."  (ECF No. 23, PageID.105-107.)  Plaintiff addresses this argument in his response.  (ECF No. 25, PageID.159-160.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "A court required to rule upon the qualified immunity issue must consider" whether:  (1) "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[;]" and, (2) "the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.Having already concluded that Plaintiff failed to allege he was engaged in protected conduct with respect to his claims against Bleil and Walsh, therefore entitling them

to summary judgment as to Plaintiff's First Amendment retaliation claims against them, the Court need not consider whether Bleil and Walsh are entitled to qualified immunity.  Incidentally, even if Plaintiff had shown that he was engaged in protected conduct with respect to his claim against Bleil, as noted above, "it is not clearly established in the Sixth Circuit that a grievance based solely on verbal abuse (persistent or otherwise) constitutes protected conduct." *Harp*, 2024 WL 1533645, at *4.

### D.     Conclusion

As set forth in detail above (*see* Section II.C.2), Plaintiff has failed to show that he was engaged in protected conduct with respect to his claim against Bleil for the alleged events of July 19, 2021 or with respect to his claim against Walsh for the alleged events of July 20, 2021.  Accordingly, the Court should **GRANT** Defendants' motion for summary judgment (ECF No. 23).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

24

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 19, 2024    s/*Anthony P. Patti*
        Anthony P. Patti
        UNITED STATES MAGISTRATE JUDGE